IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERNON LINDSEY,<br><br>                Plaintiff,<br><br>  v.<br><br>WARE-PAK, LLC<br><br>                Defendant. | Case No.<br><br>JURY DEMAND |

**COMPLAINT**

Now comes plaintiff, Vernon Lindsey ("plaintiff"), by and through his attorney, Scott C. Polman, and for his complaint against Ware-Pak, LLC ("Ware-Pak" or "defendant"), states as follows:

**Introduction and Summary of the Nature of Plaintiff's Claim**

1. This lawsuit arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, for defendant's unlawful discrimination in wrongfully terminating plaintiff after its refusal to engage in the interactive process, thus depriving plaintiff of his requested reasonable accommodation.

2. This is a failure to accommodate case.

3. At all times relevant hereto, as having been diagnosed with prostate cancer on or about January 11, 2017, plaintiff was a qualified individual with a disability, and defendant was aware of plaintiff's disability.

1

4. Shortly thereafter, plaintiff told his boss, 'Anna,' (hereinafter "Anna") the building manager, that he had been diagnosed with prostate cancer, and Anna told 'Corby,' her boss (hereinafter "Corby"), who relayed the message to Keith Shay ("Shay"), the president and CEO.

5. Next, on March 6, 2017, plaintiff tendered to Anna, a doctor's letter and schedule that stated that plaintiff would require radiation treatments from March 8, 2017 through May 9, 2017.

6. Plaintiff advised Anna that he could stay later at the end of his shift, to make-up for the time missed for his cancer treatments in the morning.

7. Thus, the specific reasonable accommodation that plaintiff requested, was a modified work schedule, allowing him to stay later in the day to make up for the relatively little time that he'd miss in the morning while undergoing cancer treatments.

8. Nevertheless, defendant terminated plaintiff's employment the very same day that plaintiff gave defendant the aforesaid letter and schedule (March 6, 2017)—without even a conversation with plaintiff regarding an accommodation, or even the slightest attempt by defendant to engage in any type of interactive process.

9. Accordingly, defendant's blatant refusal to engage in the interactive process deprived plaintiff of a reasonable accommodation, in direct and clear violation of the ADA.

**The Parties and Jurisdiction/Venue**

10. Plaintiff Vernon Lindsey resides and is domiciled in this judicial district.

11. Defendant conducts business within this judicial district, with a primary business location at 2427 Bond Street, University Park, IL, 60466.

12. The Court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C. §1331, arising under 42 U.S.C. § 12101, *et seq.*, as plaintiff's claims arise under the ADA and are based on federal statutes.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and 28 U.S.C. §1391(c), because the acts and omissions giving rise to the cause of action have arisen and occurred in the Northern District of Illinois.

14. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission under the ADA, EEOC Charge No. 440-2017-02889.

15. The EEOC issued its Notice of Right to Sue on June 20, 2017. (See attached exhibit 1, for a copy of the Notice of the Right to Sue, incorporated herein by reference).

16. This action is filed within 90 days of the plaintiff's receipt of the EEOC's notice, and jurisdiction is proper in the District Court for the Northern District of Illinois.

**Factual Allegations**

17. Plaintiff incorporates all preceding paragraphs.

18. In or around May 2016, plaintiff commenced his employment with defendant, working as a janitor/baler, and performed those duties until defendant terminated his employment on March 6, 2017.

3

19. As janitor/baler, plaintiff's primary tasks were to take out the garbage, clean the bathrooms, and go to various stations to collect boxes for the baler machine.

20. Throughout his employment, plaintiff performed his duties at or above the legitimate business expectations of his employer, and in fact received numerous compliments on his work from various management and other personnel of defendant.

21. At all times relevant hereto, as having been diagnosed with prostate cancer on or about January 11, 2017, plaintiff was a qualified individual with a disability, and defendant was aware of plaintiff's disability.

22. Shortly after diagnosis, plaintiff told his boss, Anna, the building manager, that he had been diagnosed with prostate cancer.

23. Defendant allowed plaintiff to attend around 6-8 pre-treatment sessions at his doctor's office shortly after being diagnosed.

24. On March 6, 2017, plaintiff handed to Anna, a doctor's letter that stated that plaintiff would require radiation treatments from March 8, 2017 through May 9, 2017.

25. Along with the letter, plaintiff also handed to Anna a schedule that showed the dates of the scheduled radiation treatment – each daily treatment was to last only 15 minutes, from 8:00 a.m. to 8:15 a.m. (See attached exhibit 2, for a copy of the letter and corresponding schedule of radiation treatments, incorporated herein by reference).

26. Plaintiff's normal shift was from 8:00 a.m. to 5:00 p.m., Monday through Friday.

27. Plaintiff advised Anna that he could stay later at the end of his shift, to make-up for the time missed for his cancer treatments in the morning.

28. Plaintiff estimated that his total make-up time would require him to stay late, at most, for about 40 minutes to an hour at the end of the day.

29. Thus, the specific reasonable accommodation that plaintiff requested, was to stay later in the day to make up for the relatively little time that he'd miss in the morning while undergoing prostate cancer treatments.

30. Nevertheless, defendant terminated plaintiff's employment the very same day that plaintiff gave Anna the aforesaid letter and schedule (March 6, 2017)—without even a conversation with plaintiff regarding an accommodation, or even the slightest attempt by defendant to engage in any type of interactive process or discussion.

31. Accordingly, defendant's blatant refusal to engage in the interactive process, deprived plaintiff of a reasonable accommodation, in direct and clear violation of the ADA.

32. On his discharge date, March 6, 2017, at the time when plaintiff handed the letter and schedule to Anna, he asked Anna whether she was going to show the letter to her boss, Corby, who was the plant manager and grandson of the owner.

33. Anna responded to plaintiff by telling him, 'no, there's no reason to show Corby the letter,' and so she handed the letter back to plaintiff.

34. About an hour later, plaintiff noticed that Anna and Corby were together on the plant floor, and plaintiff saw that Corby was shaking his head at what Anna was telling him.

35. That same day, at about 2:30 or 3:00 p.m., a foreman from a different building (building #2) told plaintiff: 'Vern, they always give me the dirty work, you've been laid off due to shortage of work.'

36. Anna, Corby, and Keith Shay – the president/CEO of Ware-Pak – were all aware of plaintiff's prostate cancer, and plaintiff had been told by all three not to worry about his job, and that he was a good, hard, reliable worker.

37. Shay, specifically, told plaintiff not to worry about his job, and that 'most people come out okay from prostate cancer.'

38. Plaintiff's request for a modified schedule, allowing him to work late as make-up, was a reasonable accommodation that did not impose an undue hardship on defendant, as such, this is a failure to accommodate case. *See Timmons v. Gen. Motors Corp.*, 469 F.3d 1122 (7th Cir. 2006).

39. Based on the foregoing, defendant blatantly refused to engage in the interactive process, the purpose of which is to identify and consider potential accommodations, as required under the ADA.

40. "[T]he employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996).

41. Defendant made no effort whatsoever.

## COUNT I
### Employment Discrimination in Violation of the
### ADA—Failure to Accommodate, 42 U.S.C. §12111(9)

42. Plaintiff incorporates all preceding paragraphs.

43. Plaintiff is an "employee" as defined by the ADA, 42 U.S.C. §12111(4).

44. Defendant is an "employer" as defined by the ADA, 42 U.S.C. §12111(5).

45. The above-described actions constitute "discrimination" against plaintiff within the meaning of the ADA, 42 U.S.C. §12112.

46. 42 U.S.C. 12111(9) states as follows:

> (9) Reasonable accommodation. The term "reasonable accommodation" may include—
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or ***modified work schedules***, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*See* 42 U.S.C. §12111(9). (Bold, italics, and underline added).

47. In order to establish a prima facie case of failure to accommodate, a plaintiff must show that (1) he is a qualified individual with a disability, (2) the employer was aware of his disability, and (3) the employer failed to reasonably accommodate the disability. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747-48 (7th Cir. 2011).

48. Importantly, there is no burden-shifting formulation under the duty to acoommodate, so when the employee demonstrates that the employer has failed to provide a reasonable accommodation, the employer is liable. *Lenker v. Methodist Hosp.*, 210 F.3d 792, 799 (7th Cir. 2000).

49. At all relevant times, plaintiff had a qualifying disability, of which defendant was aware, and plaintiff was in need of an accommodation within the meaning of the ADA.

50. Defendant discriminated against plaintiff based on his disability, when it failed to even consider his request for accommodation, which was a modified work schedule, allowing him to stay later at the end of his shift to make-up for the time he'd miss in the morning while receiving radiation treatments.

51. Defendant discriminated against plaintiff based on his disability, by blatantly failing to engage in any sort of interactive process whatsoever, or causing the breakdown in that process by its clear omissions.

52. Defendant fired plaintiff immediately after receiving the letter and schedule from his doctor.

53. This same-day firing carries a high degree of temporal proximity, and gives rise to a strong indication of intentional and willful discrimination.

54. On March 6, 2017, defendant discriminated against plaintiff based on his disability, when it discharged him from his employment and refused to engage in the interactive process, or caused the breakdown in that process, thus depriving plaintiff of a reasonable accommodation.

55. The actions of defendant were intentional, willful, malicious, and in deliberate indifference to plaintiff's rights.

56. The above-described actions constitute "discrimination" against plaintiff within the meaning of the ADA, 42 U.S.C. §12112.

57. The actions of defendant have caused plaintiff great mental anguish, emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other damages.

**WHEREFORE**, plaintiff, Vernon Lindsey, respectfully requests that this Honorable Court enter an order granting plaintiff the following relief:

A. Reinstatement;
B. Back-pay;
C. Front-pay;
D. Actual damages incurred as a result of the discrimination;
E. Punitive damages;
F. Pre-judgment interest;
G. Post-judgment interest;
H. Litigation costs;
I. Reasonable attorney's fees; and
J. Such other and further relief as may be just in law or equity.

                    Respectfully submitted,

                    Vernon Lindsey

              By: s/Scott C. Polman
                    Attorney for plaintiff

Scott C. Polman, Esq.
Law Office of Scott C. Polman
8130 N. Milwaukee Ave
Niles, IL 60714
ph. (847) 292-1989
fx. (847) 510-0581
email. spolman.law@comcast.net

*Counsel for Plaintiff Vernon Lindsey*